IN THE MATTER OF ARTHUR C. AGRESTA, ATTORNEY-AT-LAW.

Argued March 22, 1954—Decided March 22, 1954.

*Mr. James A. Major* argued the cause for the Ethics and Grievance Committee for Bergen County.

*Mr. James F. McGovern, Jr.,* argued the cause for the Ethics and Grievance Committee for Hudson County.

The opinion of the court was delivered by

WACHENFELD, J. This is a disciplinary case in which the decision has already been rendered and is now a matter of record. The respondent was disbarred by the unanimous vote of the court.

The purpose of the opinion is to record the circumstances and conduct complained of and the reasons for the judgment pronounced.

There were three presentments filed against the respondent, one by the Bergen County Ethics and Grievance Committee and two by the Hudson County Committee. The rule to show cause issued on these presentments was personally served upon the respondent, but upon its return he failed to appear or to be represented.

In August 1953 one of the complainants, Mrs. Louise Jaeger, a widow 65 years old, living in Newburgh, New York, met the respondent at the home of Mrs. Edwards, of Dumont, New Jersey. In her presence the respondent told Mrs. Edwards that he could put out money for investments which would return large profits. He knew places where he could obtain big loans but he would rather take small amounts and let other people make some money while he was doing likewise. He emphasized the fact that he was a lawyer and therefore would not do anything that was not right and on the "up and up." He gave assurances as to the legality of

the transaction and said that, being a lawyer, he knew what was right "and how to make those things out." He represented to them that if they were to give him money "it was to be invested."

This preliminary indoctrination was followed by a telephone call to Mrs. Jaeger while she was at the home of Mrs. Edwards, and he then suggested that she advance to him, for the purposes already outlined, either $800 or $1,400. If she were to invest the smaller amount of $800, she would receive in two months' time $975.

Thereafter the respondent drove to Newburgh, New York, saw Mrs. Jaeger and received from her $800 which was drawn from her bank account. He was cognizant of the fact that she was a widow and of the amount of money she had, as her bank books were exhibited to him, showing she had on deposit at the National Bank of Newburgh $2,400.73.

After receiving the money, the respondent gave Mrs. Jaeger a promissory note payable in two months for $975. In September, the following month, Mrs. Jaeger received a telephone call from the respondent in which he asked for another sum of $500, which Mrs. Jaeger complacently sent to him by Western Union. On this transaction he was to pay a bonus of $100 and return the money within two weeks.

None of the money so received by Agresta has ever been paid back. He admits the receipt of the cash, contending it was purely a loan. He was fully aware that he was dealing with a widowed lady of very modest means and that the bank account already referred to was her only asset. He also had knowledge that his financial status had so deteriorated as to make it impossible to borrow these sums from any bank or business institution and the possibility of his repaying the advances made was extremely remote.

Mrs. Edwards made a similar complaint against the respondent, but it was not heard because of her inability to appear at the Committee's hearings.

The presentment of the Bergen County Committee charged the respondent made false representations with knowledge of their falsity, was guilty of unprofessional conduct in obtain-

ing money from Mrs. Jaeger, and violated Canon 11 by dealing with trust property for his own benefit.

We find the charge so made sustained by the record.

The Hudson County Committee received a .verified complaint on September 15, 1953 made by John Zaccaria against the respondent, charging him with appropriating to his own use moneys that his client, Zaccaria, had delivered to him in trust to be applied as the down payment on a contract for the construction of a house in Ridgefield, New Jersey.

At a formal hearing before the Committee Mr. Zaccaria testified he employed the respondent as his attorney and requested him to communicate with the owner of a building in an endeavor to work out the terms of the contract for its purchase.

He delivered to the respondent a teller's check for $1,600 made payable to him and endorsed by him in blank, gave it to the respondent for the purpose of using it for the down payment of the contract in question. Thereafter the respondent cashed the check at a clothing store in Union City and put the proceeds to his own personal use.

The closing of the title to the house was adjourned, but on the date set the contract was signed by the respective parties and the respondent gave his personal check in the amount of $1,600 on behalf of his client, Mr. Zaccaria, as the down payment on the contract. The check was returned with a bank notation "account closed." Upon being so informed, the respondent delivered a second check for the same amount on a different bank which was likewise returned with a bank notation "account closed." Subsequently, under pressure the respondent paid $700 in cash, leaving a balance due of $900, which was never paid.

The respondent, by way of defense, says that when the closing of the title was adjourned for failure of the parties to agree upon the terms of the contract, he asked his client for permission to use this money for his personal use and it was agreed to. The client denies it.

The Committee found that the relationship of attorney and client existed; that the $1,600 was received by the

attorney in trust for the sole purpose of being used as the first payment under the contract in question; and that the respondent appropriated and used the $1,600 for his own personal obligations contrary to the instruction of his client; that the respondent paid $700 to the owner of the building on account of the $1,600 but otherwise has defaulted.

It found the respondent guilty of unethical and unprofessional conduct, and the record abundantly supports this conclusion, and we too find the respondent guilty as charged.

The second presentment by the Hudson County Ethics and Grievance Committee is upon a verified complaint made by Umburto Cafasso against the respondent, charging him with three acts of unethical and unprofessional conduct.

On March 14, 1952, upon the sale of the C & S Embroidery Co., Inc., wholly owned by Mr. Cafasso, the sum of $500 was deposited with the respondent as attorney, to be held in escrow to secure the purchaser of said business against any unpaid debts. The respondent never paid out this sum of $500 and did not account for the same to his client.

The respondent did not maintain a separate account for the holding of moneys belonging to his clients but, in fact, co-mingled this $500 with his own funds and used it for his own personal needs. When no claims were presented by the purchaser of the C & S Embroidery Company against the said $500, the client demanded the payment of the same from the respondent, who thereupon delivered to him a check in the sum of $500, which, when deposited by the client, was returned by the bank marked "insufficient funds." The amount has never been paid.

The Committee concluded the respondent was guilty of unethical and unprofessional conduct, and we are in agreement with the Committee's decision and accordingly find the defendant guilty as charged.

The other two charges need not be detailed as the Committee determined, and so do we, that the relationship of attorney and client as to those transactions did not exist.

The name of the respondent will be stricken from the rolls.

132 

 

*For disbarment*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*Opposed*—None.